# DISTRICT OF COLUMBIA *v.* HARLAN & HOLLINGS-WORTH COMPANY.

---

CONTRACTS; DAMAGES; PENALTIES; RELEASE; ACCEPTANCE; MUNICIPAL CORPORATIONS.

1. Parties to a contract may validly stipulate that a certain sum shall be the damages which one shall forfeit to the other for failure to perform the conditions of the contract,—especially where the damages sustainable may be uncertain in amount, and not easily ascertainable.

2. When an amount agreed upon in a contract as liquidated damages is out of all proportion to any actual damages that could possibly accrue, courts of equity may grant relief; but a court of law has no right to construe a contract contrary to the expressed intention of the parties, in order to make for them a better or more equitable contract.

3. Whether a sum agreed upon to be paid as damages for the failure to perform the conditions of a contract should be treated as liquidated damages or as a penalty is to be drawn from the subject-matter of the agreement, the meaning and intent of the parties as expressed in the contract, and the terms used to express that intent; and in determining that intent courts will not be bound by the exact language of the contract. The contract may use the terms "forfeit" and "penalty," and yet be construed to call for liquidated damages; and, likewise, the words "liquidated damages" used in a contract may be held to mean a penalty.

4. In order to determine whether the amount stipulated in a contract to be forfeited for nonperformance should be construed as a penalty or liquidated damages, an examination should be made of the whole contract, the sum stipulated, the ease or difficulty of measuring the pecuniary loss that would be sustained by the breach, the subject-matter of the contract, and the proportion that the amount stipulated bears to the entire consideration.

5. Where a contract between a ship-building company and a municipality for the construction of a fire boat provides that the company shall forfeit to the municipality $25 for each working day it shall be in default, "which sum of $25 per day is hereby agreed upon as fixed and liquidated damages" that the municipality "will suffer by reason of such default, and not by way of penalty," the municipality is entitled to deduct from the balance due upon the contract price for the boat, $25 for every day the company is in default in delivering the boat, irrespective of the actual damages sustained,—especially where the company does not claim that the amount named as liquidated damages is out of proportion to the amount of the contract price, and no fraud or mistake or other facts are alleged calling for a reformation of the contract.

6. A receipt given by the chief engineer of the fire department of the District for a fire boat constructed for the District will not operate as a release of the builder of the boat from the obligations of its contract with the District for the construction of the boat, or as an acceptance of the boat by the District, in the absence of anything to show that the chief engineer was authorized to accept the boat for the District, or that his action was subsequently ratified by the municipal authorities,—especially where the subsequent action of both parties to the contract negatives the idea that the receipt was intended to so operate.

7. A municipal order accepting a fire boat constructed for the municipality, upon the express condition that the builder will "complete the work on the pumps and appurtenant machinery and substitute the required monitor nozzles, so as to meet fully the requirements of the specifications," does not relieve the builder of liability under the contract for the building of the boat, for delay in completing the boat according to contract, where it appears that, before and after such conditional acceptance, efforts were made by the builder, with the assistance of the municipal agents, to put the machinery in proper order, and that that was not finally accomplished until nearly four months after the order was made.

No. 1762.   Submitted December 13, 1907.   Decided January 14, 1908.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on the verdict of a jury in an action against the District of Columbia to recover the balance of the purchase price of a boat constructed for the District.                          *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an action of covenant brought in the supreme court of the District of Columbia for the recovery of a balance claimed to be due upon a contract for the construction of a boat designed for use as a part of the equipment of the fire department of the city of Washington. The contract in question was made on December 31, 1904, by which the appellee, the Harlan & Hollingsworth Company, a corporation, hereinafter referred to as the plaintiff, agreed for the sum of $49,739 to furnish and deliver to appellant, the District of Columbia, defendant below, the fire boat in question, complete within 115 working days from December 3, 1904. The material provisions of this contract essential to the present inquiry are set forth in the following portions of the instructions to bidders and general stipulations, which were made a part of the contract:

"Failure of the contractor to commence the work and to prosecute it in a satisfactory manner and at a rate of progress sufficient, in the opinion of the commissioners, to insure the vessel's completion within the time named in the contract, will be authority for the commissioners, in their discretion, to suspend the contractors from the work and employ other parties to complete it, or to employ additional labor to assist in its completion, or to annul the contract."

"The commissioners may, if in their opinion such action would be to the advantage of the District, grant the contractor an extension of time, but in that event the contractor shall forfeit to the District of Columbia the sum of $25 for each working day that he shall be in default, which sum of $25 per day is hereby agreed upon as fixed and liquidated damages that the District of Columbia will suffer by reason of such default, and not by way of penalty. And the said commissioners may and shall deduct and retain said sum out of any moneys that may be due or become due under this agreement."

Owing to some changes subsequently agreed upon, the time for the completion of the boat was extended by a supplemental

contract to May 25, 1905, which contract contained the following provisions:

"Therefore said contract time is hereby extended an additional period of thirty (30) working days, said extended time to be without imposition of the forfeiture of $25 per day as stipulated in said contract as liquidated damages.

"It is further agreed by and between the parties hereto, that this supplement shall in no wise impair, destroy, or affect the original contract, or the price stated therein, or the provisions thereof, except as herein stated, but is to be deemed and taken as a supplement thereof."

The boat was built by the plaintiff company at Wilmington, Delaware, and was to be delivered at a point within the District of Columbia, to be designated by the commissioners of the District. The plaintiff notified the commissioners that the boat would leave Wilmington for Washington on June 2, 1905, and inquired what provisions would be made for her formal acceptance on arrival at Washington, and to whom she should be delivered. But one of the commissioners, Mr. Biddle, was in the city when this communication was received. The secretary of the board notified the plaintiff in the following letter that the chief engineer of the fire department would be at plaintiff's works on June 2 to accompany the boat to Washington:

Executive Office,
Commissioners of the District of Columbia,
Washington, June 1st, 1905.
Mr. S. K. Smith,
    Assistant Treasurer of the Harlan &
    Hollingsworth Corporation,
                    Wilmington, Delaware.
Dear Mr. Smith:—

The commissioners have your letter of the 31st ultimo, inquiring what provision is made for the formal acceptance of the Firefighter upon her arrival at Washington. Commissioner MacFarland and Commissioner West are out of the city, and the latter will not return until to-morrow morning, but commis-

sioner Biddle instructs me to state that the chief engineer of the fire department will be at your works, and probably accompany the boat to her destination. Any instructions he may give on that point will be satisfactory to the commissioners.

Very respectfully,

W. Tindall,
Secretary.

On this trip two tests of the boat were made, one on the Delaware river and one on the Potomac. On the arrival of the boat in Washington, on June 5, the following receipt was given to the agent of the plaintiff company:

Washington, D. C., June 5, 1905.
Received of Harlan & Hollingsworth Company the steamer "Firefighter" at our wharf in Washington, D. C., in good order.

William T. Belt,
Chief Engineer, Fire Dept.

It appears that during the tests which were made on the way to Washington, the attention of the plaintiff's agent was called to the defective condition of the nozzles and the starboard pump. On June 23, subsequent to the arrival of the boat in Washington, Commissioner MacFarland told the vice president of the plaintiff company that the Glazier nozzles installed in the boat would have to be replaced by Woodhouse nozzles. On July 3, 1905, the board of Commissioners passed the following order:

Ordered, that the fire boat "Firefighter," constructed under the appropriation made April 27, 1904, by the Harlan & Hollingsworth Corporation of Wilmington, Delaware, is hereby accepted, in view of the recommendation of Messrs. Tams, Le Moine, and Crane, designers and supervisors, and of the chief engineer of the fire department, supplemented by the report of the machinist of the fire department, upon the condition "that the contractors shall complete the work on the pumps and

appurtenant machinery and substitute the required monitor pipe nozzles, so as to meet fully the requirements of the specifications, and that until this is done to the satisfaction of the commissioners, on the recommendation of Tams, Le Moine, and Crane, and the chief engineer of the fire department, the commissioners retain out of the balance due the Harlan & Hollingsworth Corporation, namely, $16,165.39, $5,000., besides the ten (10) per cent amounting to $3,730.44 retained from the three payments already made."

Official copy furnished Harlan & Hollingsworth Corporation, Wilmington, Delaware, by order.

William Tindall, Secretary.

Before the making of this order, the plaintiff company had arranged to put the pumps in order, and had assured the defendant that the Woodhouse nozzles had been ordered as appears from the following letter:

Harlan & Hollingsworth Company,
Wilmington, Del., July 21, 1905.
Mr. Henry B. F. MacFarland,
Commissioner of the District of Columbia,
Washington, D. C.

Dear Sir:—

We beg to acknowledge receipt of yours of the 20th inst., regarding the nozzles for the fire boat "Firefighter."

The writer begs to inform you personally that in his statement to you on June 23d, that the Woodhouse nozzles had been ordered, he acted in good faith. The matter referred to in your letter is having our personal attention, and we will be glad, after our investigation, to let you know in what manner the error occurred, and in which of our departments.

Regretting extremely the delay that you have been caused, we are,

Very truly yours,
Persifor Frazer, Jr.,
Vice President.

The boat was finally accepted by the commissioners on October 31, 1905, 132 working days after the expiration of the supplemental contract. In the final settlement, the commissioners deducted from the contract price of the boat, as liquidated damages under the contract, $25 per day for 132 days,— a total of $3,300. It was for the recovery of this amount, with interest, that this action was brought in the supreme court of the District. Judgment was rendered for the full amount, and from that judgment defendant appealed to this court.

When plaintiff's attention was called to the defective condition of the pump and nozzles, it proceeded, without protest or complaint, to make good the defect. It thereby admitted, by implication at least, its failure to complete the boat as required by the conditions of the contract. That such failure on the part of the plaintiff can be attributed to the understanding of the parties may be clearly inferred from the theory upon which the cause was tried in the court below. Both parties in the trial proceeded upon the assumption of a default on the part of the plaintiff to complete the boat within the time specified in the contract. That there was delay, and that the delay was due to the plaintiff, seems to have been conceded. The issue presented to the jury was practically narrowed down to one of damages. The plaintiff, in its prayer for instructions to the jury, contended that, under the contract, only actual damage could be assessed, and that, inasmuch as no actual damage had been shown to have been sustained by the defendant, the verdict should be for the plaintiff for the full amount claimed. The defendant, in its prayer for instructions, insisted that, under the contract, the damages had been fixed by the parties at $25 per day, and the defendant was justified, through its Board of commissioners, in deducting from the final payment the amount sued for in this action. The trial court adopted the view of the plaintiff and instructed the jury as follows:

"In the case of delay in the delivery of the 'Firefighter,' subsequent to May 25, 1905, caused by the plaintiff's fault, the commissioners of the District of Columbia were authorized and entitled to deduct from the price stipulated to be paid for

said steamer and to withhold payment to the plaintiff of an amount equal to the actual damage sustained by the District of Columbia in consequence of such delay. The commissioners were not entitled to make any deduction as liquidated damages at the arbitrary rate of $25 per day, irrespective of the actual damage sustained. If you find from the evidence that the District of Columbia sustained no actual damage on account of such delay, you shall render a verdict for the plaintiff for the sum of $3,300, with interest from the date of delivery. If, however, you find from the evidence that such delay caused the District of Columbia actual damage, you shall ascertain its amount, and if found to be less than $3,300 your verdict shall be for the plaintiff and for a sum equal to the difference between $3,300 and the amount of the damage, together with interest on the difference from the date of delivery."

*Mr. Edward H. Thomas,* Corporation Counsel, and *Mr. Henry P. Blair,* Assistant, for the appellant.

*Mr. James H. Hayden* and *Mr. George W. Dalzell* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Counsel for plaintiff contends that the contract provides for the imposition of a penalty, and not liquidated damages, and therefore the District of Columbia was only entitled to deduct from the contract price the amount of damages actually sustained in consequence of plaintiff's delay in delivering the boat. In England, before the passage of the statute of forfeitures and penalties (8 & 9 Wm. III.), in actions at law on a contract, where the performance of the conditions was secured by a penalty, the recovery was for the full amount of the penalty. Courts of equity, however, could relieve against fraud or mistake. The effect of this statute was to furnish the same relief in a court of law as could be obtained in a court of equity. In *Sun Printing & Pub. Asso.* v. *Moore,* 183 U. S.

661, 46 L. ed. 377, 22 Sup. Ct. Rep. 240, the court, speaking through Mr. Justice White, said: "Of course, courts of common law, merely by reason of the statute of 8 & 9 Wm. III., referred to, did not acquire the power to give relief in cases of contract, where a court of equity would not have exercised a similar power. Now, courts of equity do not grant relief in cases of liquidated damages—that is, cases 'when the parties have agreed that, in case one party shall do a stipulated act, or omit to do it, the other party shall receive a certain sum as the just, appropriate, and conventional amount of the damages sustained by such act or omission.' Story, Eq. Jur. sec. 1318. And as long ago as 1768 Lord Mansfield, in *Lowe* v. *Peers,* 4 Burr. 2225, said: * * * 'Courts of equity will relieve against a penalty upon a compensation; but where the covenant is to pay a particular liquidated sum a court of equity cannot make a new covenant for a man; nor is there any room for compensation or relief.' * * * Whilst the courts of the United States, in actions at law, undoubtedly possess the power conferred upon the courts of common law by the statutes of 8 & 9 Wm. III., and whilst recognition of such power was embodied in the judiciary act of 1789, reproduced in sec. 961 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 699), the duty of such courts to give effect to the plainly expressed will of contracting parties is as imperatively necessary now as it was at common law after the adoption of the English statute." It will be observed that at the present time, neither in England nor in this country do courts of law possess the right or power to give relief in cases of contract where a court of equity would not exercise a similar power. The rights of the parties to this action can rise no higher in a court of law than they would in a court of equity, and courts of equity, in the absence of fraud or mistake, do not grant relief in cases of liquidated damages.

There is nothing to prevent the parties from stipulating in advance that a certain sum shall be the damages which one shall forfeit to the other for failure to perform the conditions of a valid contract. Especially is this true where the damages

to be sustained are uncertain in amount and cannot easily be ascertained. In the case at bar the actual amount of damage that might accrue because of the failure of the plaintiff to complete the fire boat within the time stipulated would be difficult to anticipate. The loss that might be sustained by the absence of an important part of the equipment of the fire department, such as this boat, might be inestimable. The fact that a fire did not occur during the period of delay is immaterial. We are here concerned with the conditions that confronted the parties when the contract was made and the clause providing for damages in case of delay was inserted. It was the possible damage that might accrue from delay that governed the parties in fixing in advance the amount that should be regarded as settled and liquidated damages. It is not our province, in the absence of fraud or mistake, to set aside the plain terms of this contract and undertake to make for the parties a better contract than they made for themselves. Improvident and unwise contracts are often made, and where the parties act independently, free from fraud or other reason that would call for the intervention of a court of equity, and the intention can be drawn with reasonable clearness from the written instrument, it is not the duty, or within the power, of courts of law to place a different construction upon the contract than was intended by the parties when the agreement was originally made. Where the amount agreed upon as liquidated damages is out of all proportion to any actual damages that could possibly accrue, courts of equity may grant relief; but a court of law has no right to construe a contract contrary to the intention of the parties therein expressed, in order to make for them a better or more equitable contract than they made for themselves at the inception of the transaction, when both parties could view equally the advantages and disadvantages that would probably arise.

Whether the sum agreed to be paid as damages for the failure to perform the conditions of a contract shall be treated as liquidated damages or as a penalty is to be drawn from the subject-matter of the agreement, the meaning and intent of

the parties as expressed in the contract, and the terms used to express that intent. In determining this question, courts will not be bound by the exact language of the contract. The contract may use the terms "forfeit" and "penalty," and yet be construed to call for liquidated damages; and, likewise, the words "liquidated damages" used in a contract may be held to mean a penalty. In order to determine whether the amount stipulated in a contract to be forfeited for nonperformance should be construed as a penalty or liquidated damages, an examination should be made of the whole contract, the sum stipulated, the ease or difficulty of measuring the pecuniary loss that would be sustained by the breach, the subject-matter of the contract, and the proportion that the amount stipulated bears to the entire consideration. Cases might arise where it would be difficult to ascertain exactly what the parties meant by a stipulation in a contract looking to the compensation to one party for the breach of the other. But the contract in the case at bar presents no such difficulty. The intention of the parties to this contract cannot be misunderstood. It is stated that "the contractor shall forfeit to the District of Columbia the sum of $25 for each working day that he shall be in default, which sum of $25 per day is hereby agreed upon as fixed and liquidated damages that the District of Columbia will suffer by reason of such default, and not by way of penalty." In the face of such language it would be absurd for a court to impute to the parties an intention different from that which the language used so clearly implies. Besides, the plaintiff has raised no issue as to the sum named in the contract being out of proportion to the amount involved in the transaction, and no fraud or mistake is alleged or facts stated that would justify this court in holding that the contract should be reformed.

It is contended by counsel for plaintiff that the defendant, by the receipt of the engineer of the fire department of June 5th, and the order of the commissioners of July 3d, waived all right to retain liquidated damages. The receipt given by the engineer of the fire department upon the arrival of the boat in Washington cannot be construed into either a release

of the plaintiff from the obligations of its contract, or an acceptance of the boat by the defendant. Even if the engineer could be regarded as the agent of the defendant, his agency in this instance would be limited to the performance of such acts as legally attached to his office, or as he had been specially authorized to perform by order of the commissioners of the District of Columbia. No such order had been made delegating authority to him to accept, on behalf of the defendant, the boat in question, and we are not advised of any official prerogative that would empower him to act in the premises. The engineer was sent to Wilmington by the order of Commissioner Biddle—not by any offcial order of the board of commissioners—to accompany the boat to Washington. The record does not disclose any subsequent order of the board confirming or approving the action of the engineer in giving this receipt. It will be observed, therefore, that no authority was conferred upon the engineer to either receipt for or accept the boat. That this receipt was intended to operate as either a release of the plaintiff or an acceptance by the defendant is negatived by the subsequent action of the parties. Defendant's agents continued to insist upon the completion of the boat in accordance with the terms of the contract. Plaintiff, without protest or complaint, proceeded to procure and install proper machinery to replace the parts that had proved defective. There seemed to have been a mutual agreement that default had been made in complying with the terms of the contract, and neither party apparently recognized in the receipt anything that would operate to limit or change the conditions of the contract. We are therefore of the opinion that the receipt cannot be held to have any binding effect upon the defendant.

The order of the commissioners of July 3d, however, presents a more difficult question. Usually the acceptance of work contracted for by one of the parties relieves the other party of liability for delay in the performance of his part of the contract, but such acceptance must be unconditional, and with full knowledge, on the part of the accepting party, of any default on the part of the other party. Here the acceptance was upon

the express condition that the plaintiff should "complete the work on the pumps and appurtenant machinery and substitute the required monitor pipe nozzles, so as to meet fully the requirements of the specifications." This order must be interpreted in connection with the conditions then existing. The evidence unmistakably discloses that, both before and after the date of this order, repeated efforts were made by the plaintiff, with the assistance of the employees of the defendant, to put the machinery in proper order, and that this was not finally accomplished until near the close of October. The order in no way changed or varied the terms of the contract. By it the commissioners simply said, we will accept the boat upon condition that you comply fully with the terms of your contract. The condition upon which acceptance was based was the complete fulfilment of the contract. The order imposed no conditions different from those imposed by the contract. It laid upon the plaintiff no greater obligation than was provided for in the contract. If the order had in any way interfered with the plaintiff in carrying out its part of the contract, or imposed upon plaintiff additional burdens, this would have furnished an excuse for nonperformance. *Peck* v. *United States,* 102 U. S. 64, 26 L. ed. 46. The boat was sent here from Wilmington, Delaware, presumably in a completed condition. On arrival, the employees of plaintiff left it on the hands of the commissioners of the District. Instead of the commissioners interfering in any way with the plaintiff or its agents or employees, the evidence discloses that the officers and employees of the defendant, at large expense to the defendant, took care of the boat during the period of delay, and not only kept the engines fired and the boat in condition to test the machinery that was being replaced, but assisted the employees of the plaintiff in making the changes necessary to enable plaintiff to comply with the requirements of its contract. To hold that by this conduct, or by the order of July 3, the defendant waived its right to deduct the stipulated damage for the period of delay, would violate every equitable consideration that should govern the conduct of the parties.

The judgment is reversed, with costs, and the cause remanded, with instructions to the court below to proceed in conformity with this opinion.                           *Reversed.*