## NASH *v.* MILFORD.

---

SPECIFIC PERFORMANCE; LACHES; VENDOR AND VENDEE; AUDITOR; COMPENSATION FOR IMPROVEMENTS; ACCOUNTING.

1. Where an agreement which is sought to be specifically enforced is contained in several instruments, they must all be considered together to determine the import of the agreement.

2. While it is true that it must appear that a party seeking specific performance of a contract has acted in good faith, it is also true that the facts and circumstances of each case must control the court in its determination of that question.

3. Where the owner of land, after having agreed to surrender it to another for a limited time for specific purposes, endeavors to repudiate the agreement by refusing to surrender possession, and such other person thereupon obtains possession by asserting the right to possession secured to him by the agreement, specific performance of the agreement, when sought by the heirs of the owner of the land, will not be denied merely because of their ancestor's unsuccessful attempt to repudiate the agreement.

4. The length of time during which a party neglects the assertion of his rights which must pass in order to show laches varies with the peculiar circumstances of each case, and is not, like the matters of limitation, subject to an arbitrary rule.

5. Mere submission to an injury cannot generally, in the absence of other circumstances, take away a right of action, unless continued for the period limited by statute for the enforcement of such right. (Following *Pryor* v. *McIntire*, 7 App. D. C. 417).

6. Where the owner of improved land subject to two deeds of trust conveyed it to another under an agreement whereby the latter was to hold it, and apply the revenues to the payment of the debts secured by the deeds of trust and other charges against it, and then reconvey it to the owner, and the grantee afterwards acquired the notes secured by the deeds of trust, foreclosed one of the deeds of trust, and purchased the property in his own name at the foreclosure sale, and afterwards treated the property as his own, the heirs of the grantor are not guilty of laches precluding them from maintaining a bill against the heirs of the grantee for specific performance of the agreement to reconvey, where the bill was filed about a year after they were entitled to specific performance, but about eight years after the foreclosure sale, especially where there is nothing to show that the delay has in any way prejudiced the defendants.

7. The rights of the heirs of a party who has made an agreement concerning land are the same as his rights would be, if living, in a suit to specifically enforce the agreement.

8. Findings of fact by the auditor of the lower court will not be set aside by this court unless it appears that there has been an error in law or a conclusion of fact unwarranted by the evidence. (Following *Hutchins* v. *Munn*, 28 App. D. C. 271, 209 U. S. 246, 52 L. ed. 776, 28 Sup. Ct. Rep. 504.

9. Where the heirs of a party taking real estate in trust under an agreement which only entitled him to be reimbursed for such improvements as were reasonable and were necessary to preserve the income-producing capacity of the property, and made in good faith, continue, after the death of their ancestor and the expiration of the trust, to hold the property as their own, and, upon the destruction by fire of a building on the land, rebuild in a much more substantial manner, they are chargeable, in an accounting with the owners, with all rents received, and not only such rents as the property would have yielded without the improvements made by them.

No. 1969.   Submitted January 18, 1909.   Decided April 6, 1909.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia, sitting as an Equity Court, in a suit for the specific performance of an agreement relating to land.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is a bill for the specific performance of a contract entered into on June 18, 1889, by John A. Louden and his wife, Ellen, with Ephraim Nash. The suit is between the heirs of the original parties, the parties themselves having died prior to the filing of the bill on January 12, 1898.

At the time the original contract was entered into Louden and his wife were the owners of a parcel of land in Anacostia, District of Columbia, upon which there was a building containing stores and a large hall. Upon this property there were two deeds of trust, the first to secure a debt of $1,000, and the second to secure the payment of forty-four promissory notes dated February 8, 1889. These notes were payable monthly, with the exception of two months in each year, and were given in settlement of an indebtedness of $750, each note being for the sum of $20 excepting the last, which was for $12.65. As drawn, they included interest to maturity. Three papers were concurrently executed between the parties on said June 18, 1889; (1) a deed of conveyance reciting a consideration of $800, and given subject to existing encumbrances, from Louden and wife

to Nash; (2) the above-mentioned agreement, reciting the conveyance to Nash, and stating that, "in consideration of the sum of one dollar, lawful money in hand paid by the parties of the second part to the party of the first part, the receipt whereof is hereby acknowledged, the party of the first part hereby agrees to reconvey said real estate to said parties of the second part, their heirs and assigns, so soon as the revenues shall pay the monthly notes secured by second deed of trust on said property, first having paid out of said revenues, income, or rent taxes, insurance, reasonable repairs, interest on the one-thousand-dollar note secured by the first deed of trust on said real estate, and all other proper and lawful expenses in and about the management of said property, said notes secured by said second deed of trust to be paid in order in which they come;" (3) rent agreement under which Nash let said premises · to Louden at a fixed monthly rental.

For some reason Louden declined to carry out his part of the arrangement, and also refused to surrrender possession of the property. Thereupon Nash instituted an action for the possession of the premises, *based upon his agreement with Louden,* and on December 2, 1889, secured possession. Soon after entering into said agreement with Louden, Nash acquired the second trust notes, and subsequently he also acquired the $1,000 trust note. After entering into possession of the property, he allowed the second trust notes then held by him to become overdue and in default, and on May 22, 1890, he procured the property to be sold by the trustees under this second deed of trust, and purchased it himself. Thereafter he treated the property as his own, and disregarded entirely his contract with Louden.

Ellen F. Louden died October 1, 1890, and John A Louden died November 20, 1895. Ephraim Nash died February 26, 1894. Since the death of Nash his widow, Jane Nash, and his children, who are the other appellants, have been in continuous possession of the property in question, and have treated the same as their property.

On the 24th of February, 1905, the court below entered a de-

cree adjudging the complainants to be entitled to specific per-
formance of said agreement of June 18, 1889, and referring
the matter to the auditor to state an account. In the auditor's
report, he says: "The case presents some difficulty owing to the
fact that it distinctly appears that no account of ·the dealings
of Nash with this property in his lifetime or of his widow and
heirs after his death was ever rendered to the Loudens or their
successors in interest, nor does it appear that any account was
kept of either the rents received or expenditures actually made
for or on account of the property."

After carefully considering the testimony in the case, the
auditor finds that Nash and his wife and heirs, at the close of
the year 1896, "had received net rents sufficient to pay the
second trust notes in full, all the interest which had accrued
on the note secured by the first trust, and had a balance of
$87.88 of rents in hands."

The final decree, entered June 24, 1908, adjudged that the
complainants have title to said property free and discharged of
any claims and demands of the defendants or any of them, and
that the defendants forthwith surrender possession of said
premises to said complainants, and pay to the complainants
$98.13, and account for rents from the 29th of February,
1908.

*Mr. Edward H. Thomas* and *Mr. Francis H. Stephens* for
the appellants.

*Mr. A. A. Birney* and *Mr. H. F. Woodard* for the appellees.

Mr. Justice ROBB delivered the opinion of the Court:

Several of the assignments of error were not pressed in the
argument at bar. Those remaining may be disposed of under a
few general propositions.

The three papers executed on June 18, 1889, must, of course,
be considered together in determining the import of the agree-
ment upon which complainants base their bill. When so con-

sidered there is no room for doubt that, by this agreement, Nash was constituted a trustee to hold the legal title and possession of the property, manage it, and apply the revenues derived therefrom to the payment of taxes, insurance, repairs, interest on the $1,000 note, other proper expenses, and the notes secured by the second deed of trust. When the second trust debt should be paid, Nash agreed to surrender possession of the property to Louden. It is apparent that Louden was led to believe that Nash could manage the property to greater advantage than he himself could manage it. Appellants do not seriously challenge the interpretation placed upon this contract by the court below, but base their contention that the complainants are not entitled to specific performance upon the refusal of Louden to either pay rent or surrender possession, and upon the delay of the complainants in bringing their bill.

While it is true that it must appear that the party seeking specific performance of a contract has acted in good faith, it is also true that the facts and circumstances of each case must control the court in its determination of this question. The record discloses that Louden and his wife were ignorant and uneducated people, and that Nash was a man of considerable business experience. In the light of what subsequently took place, it is reasonable to presume that, after entering into the agreement, the Loudens became suspicious of the absolute good faith of Nash, and therefore endeavored to repudiate their agreement with him. But they were not successful in this, for the record shows that Nash obtained possession of the premises by the assertion of a right secured to him by the very agreement upon which the bill in this case is based. It would be unconscionable, it seems to us, to deny relief because Nash was caused some inconvenience in securing possession under the contract. He then made his election, and, having undertaken to carry out the provisions of the trust, must be held responsible therefor.

It was January 1, 1897, before complainants were entitled to specific performance under the contract. There was a delay, therefore, of only about a year in filing their bill. This delay

and the circumstances surrounding the case we do not think
sufficient to defeat their claim. "The length of time during
which the party neglects the assertion of his rights, which must
pass in order to show laches, varies with the peculiar circum-
stances of each case, and is not, like the matters of limitations,
subject to an arbitrary rule. It is an equitable defense, con-
trolled by equitable considerations, and the lapse of time must
be so great, and the relations of the defendant to the rights
such, that it would be inequitable to permit the plaintiff to now
assert them." *Halstead* v. *Grinnan,* 152 U. S. 416, 38 L. ed.
496, 14 Sup. Ct. Rep. 641.

Under this agreement Nash and his heirs had absolute con-
trol of this property. They were to manage it, and did in
fact manage it, as their own; and until compelled by this bill
to account, it was impossible for complainants to know whether
the time had arrived when they could demand specific per-
formance under the contract. It does not appear that the delay
in any way prejudiced the defendants. The point is urged
that action should have been taken by Louden after the sale
under said second deed of trust in May, 1890, the evidence
showing that he was present at such sale. Here again we must
take into consideration the situation of the parties. Nash had
been for some months occupying the premises under said trust
agreement. The sale was in direct violation of his trust and in
no way relieved him from the obligations of that trust. The
parties are dead, and no evidence other than the inferences to be
drawn from his inactivity has been introduced to show
acquiescence on the part of Louden. Mere submission to an
injury cannot generally, in the absence of other circumstances,
take away a right of action unless continued for the period lim-
ited by statute for the enforcement of such right. *Kilbourn* v.
*Sunderland,* 130 U. S. 505, 32 L. ed. 1005, 9 Sup. Ct. Rep.
594; *Pryor* v. *McIntire,* 7 App. D. C. 417.

The property in this case is still in the hands of parties
charged with knowledge of the original agreement, for, of
course, their right as heirs is precisely the same as the right of
Nash were he living. The agreement continuing in force not-

withstanding the sale, we do not think the circumstances of the case demand that complainants be charged with unreasonable delay in asserting their rights.

There are several assignments of error based upon exceptions to the auditor's report which involve mere findings of facts and which were not pressed in the argument and will not be considered here. Such findings will not be set aside unless it appears that there has been an error in law or a conclusion of fact unwarranted by the evidence. *Hutchins* v. *Munn,* 209 U. S. 246, 52 L. ed. 776, 28 Sup. Ct. Rep. 504; 28 App. D. C. 271. Neither of these propositions appears in this case.

One other contention remains. In 1897, fire entirely destroyed the building on these premises. It was rebuilt in a much more substantial manner by the appellants. Other improvements had theretofore been made by them. They now insist that they should only be charged with such rents and profits as the property would have yielded without the improvements made by them. In the circumstances of this case this is quite a remarkable contention. They held this property in trust and were only entitled to be reimbursed for such improvements as were reasonable and necessary to preserve the income-producing capacity of the property, and made in good faith. Since the premises should have been surrendered under the trust agreement at the close of 1896, and prior to the making of most of these improvements, appellants are certainly not in a position to challenge the ruling of the court below charging them with the income on the property unjustly withheld from its true owners. *Jackson* v. *Ludeling* (*Jackson* v. *Vicksburg, S. & T. R. Co.*) 99 U. S. 513, 25 L. ed. 460; *Tatum* v. *McLellan,* 56 Miss. 352. There is no foundation for the contention that appellants made these improvements under the bona fide impression that they were the lawful owners of the property, for they were charged with knowledge of the trust agreement and bound thereby. It would be inequitable to charge the estate with the cost of the improvements, and, at the same time, deprive it of the benefit of such improvements. The cost of these improvements has been allowed on the theory that they were made for

the benefit of the estate. Manifestly the estate is entitled to their full benefit.

The decree is affirmed, with costs.        *Affirmed.*