[No. 38691.     Department Two.     June 1, 1967.]

*In the Matter of the Estate of* HENRY L. LARSON, *Deceased.*
CLIFFORD S. LARSON, *Appellant,* V. CLEO GRIFFITH, *as*
*Administratrix, Respondent.**

*J. D. Searle,* for appellant.

*Duane Lansverk* (of *Robinson, Landerholm, Memovich,*
*Lansverk, Whitesides & Marsh*) and *Gilbert C. Valley,* for
respondent.

DONWORTH, J.—Henry Larson died intestate April 7,
1964. He was survived by his widow, four grown children
by a prior marriage, including appellant, and one step-
daughter.

July 1, 1964, an inventory of decedent's estate was filed,
showing a total appraised valuation of $58,556.76. Included
in the inventory as an asset was an item denominated
"Open Account Loan to Clifford S. Larson" in the sum of
$8,500.

October 28, 1964, a motion was filed in the administration
proceeding wherein the four children of decedent requested

*Reported in 428 P.2d 558.

the court to strike from the inventory of the estate two items, one of which was the open account loan. Attached to the motion was an affidavit of Clifford Larson in which he alleged that decedent, during his lifetime, had made a gift to him of the $8,500 referred to as an open account loan. The dispute concerning the other item listed in the motion to strike was resolved by the written stipulation of the parties concerned and is not material to this action.

By answer, the stepdaughter of decedent, as administratrix of the estate, alleged that she had listed in the inventory of the estate an item designated as an "Open Account Loan to Clifford S. Larson $8,500.00," which was made April 10, 1963, and is now due and owing, and no part thereof has been paid. The answer prayed for declaratory relief against Clifford Larson with respect to this item. The matter came on for hearing before the court sitting without a jury, and at the close of appellant's evidence the court denied the motion to strike the $8,500 item from the inventory of the estate. The court entered seven findings of fact and five conclusions of law, and decreed that there was presently due and owing from Clifford S. Larson to the estate of decedent, the sum of $8,500 plus statutory interest from June 24, 1964, the date of the entry of the inventory. From that decree, Clifford Larson has appealed.

That the $8,500 was delivered to Clifford Larson by his father, decedent, is evidenced by a check dated April 10, 1963, written by the decedent on the First Independent Bank of Battleground, Washington, payable to Clifford Larson, in the sum of $8,500. On the face of the check, in handwriting identified as that of decedent, are the words "As Loan."

Subsequently, appellant wrote a note to his father, dated March 26, 1964, on a piece of notebook paper. The note read:

Dad

It looks like you are going to be pretty well kept under watch so I'll try to let you know this way rather than

start a fuss. I am wondering what to do about the check you wrote for the land[1] last year, if you want it payed back now, I'll go to the bank, because I have heard some rumers that the Cancelled Check will be used on me on account of the size on it, If you could, I would like to have the Cancelled Check which I may need for income tax reasons, but I don't know how you want to handle this now. I don't dare wait any longer before doing something.

On the reverse side of the same piece of paper, in handwriting identified as being that of decedent, was written:

Keep it No Return Maby Pay Income Tax will try and find check Hur and Cleo got lawyers in Van Cover to stop my Bank Biss in Wibaux Mont.

After hearing, the trial court entered the following findings of fact:

1. On April 10, 1963 Henry L. Larson made an open account loan to his son, Clifford S. Larson, in the amount of $8,500.00.

2. It appears from the evidence introduced by Clifford S. Larson that on or about March 26, 1964 Clifford wrote a note to his father, Henry L. Larson, in which Clifford stated in part: . . . [Note set forth above was quoted by the trial court with emphasis on the word "now" appearing in the note.] The above note written by Clifford S. Larson is ambiguous. Its most obvious meaning is to request information as to what, if anything, his father wanted him to do about the loan at that time.

3. The note on the back of the note written by Clifford S. Larson to Henry L. Larson was written by Henry L. Larson. It appears from the evidence introduced by Clifford S. Larson that it was written in response to the note written by Clifford S. Larson to his father. It reads in part: . . . [The note set forth above was here quoted in part by the court.] The note from Henry L. Larson is also ambiguous. It does not evidence an intent to make a gift of $8,500.00 to Clifford S. Larson to the exclusion of the other children of Henry L. Larson.

---

[1]A deed, dated April 16, 1963, conveying to appellant certain land located in Thurston County for the sum of $8,500, and the vendee's endorsement on the canceled check which was given appellant by decedent, clearly show that the check referred to in appellant's note to his father is the same check as is involved in the present controversy.

4. Henry L. Larson was a frugal and thrifty man.

5. Within two months of the time of his death, Henry L. Larson indicated in a letter to the president of a bank in Wibaux, Montana that he wanted a certain certificate of deposit in that bank to be divided *equally* among his four children.

6. There was no evidence introduced that the loan to Clifford S. Larson was ever repaid. There was no evidence introduced that the loan to Clifford S. Larson by Henry L. Larson was ever satisfied in any manner. There was no evidence introduced that Henry L. Larson ever intended to make a gift of the $8,500.00 loan to his son, Clifford S. Larson, to the exclusion of his other children.

7. Clifford S. Larson failed to sustain his burden of proving such delivery of the claimed gift as would divest, absolutely and irrevocably, the alleged donor, Henry L. Larson, of the present dominion and control over the subject of the alleged gift, and confer upon the alleged donee Clifford S. Larson the dominion and control of that property.

Appellant assigns as error each of the above-quoted findings of fact.

Based on the findings of fact, the trial court entered the following conclusions of law:

1. This court has jurisdiction over Clifford S. Larson and the matter at issue in this estate.

2. Henry L. Larson made an open account loan of $8,500.00 to his son Clifford S. Larson on April 10, 1963. Said loan was never repaid or satisfied in any manner.

3. In the last months before his death Henry L. Larson desired to treat all of his children equally in the division of his property.

4. Clifford S. Larson failed to sustain his burden of proving by evidence which is clear, convincing, strong and satisfactory that Henry L. Larson had a clear and unmistakable intention to make a gift of the $8,500.00 loan to his son Clifford S. Larson, and Clifford S. Larson failed to sustain his burden of proving the delivery of the claimed gift from Henry L. Larson to Clifford S. Larson.

5. There is presently due and owing from Clifford S. Larson to the estate of Henry L. Larson, deceased, the sum of $8,500.00 plus interest at the statutory rate from June 24, 1964.

In essence, the question presented on this appeal is whether the note from Henry L. Larson to his son Clifford constituted a valid forgiveness of the loan he had previously made to his son. The contention of appellant that the transaction did not constitute a loan in the first instance is without merit. The words "As Loan" on the face of the check in the handwriting of decedent is unequivocal and supports the finding of the trial court in that regard.

Respondent seems to contend that an actual, physical delivery of this check was necessary to constitute a valid gift. This is the rule with regard to *securities* capable of manual delivery, as illustrated by the cases cited by respondent. But no securities are involved in the present controversy. The canceled check is merely extrinsic evidence of the loan and appellant had already received the proceeds on April 10, 1963, and had used the check to purchase the real property referred to in footnote 1. Physical delivery of the canceled check was not necessary. The cases cited by respondent are not applicable.

■ The rule to be applied was stated by this court in *Tucker v. Brown*, 199 Wash. 320, 329, 92 P.2d 221 (1939), to be that:

A gift of a chose in action, not having such tangible body as to be chattel property,

". . . including a gift of a simple debt, cannot be made effective without a deed, the execution of an adequate release or transfer in writing, or the performance of some other act placing the debt beyond the legal control of the creditor."

Thus, the question to be answered becomes whether the note from decedent to appellant, in answer to the latter's written inquiry, constitutes an "adequate release or transfer in writing" so as to place the debt "beyond the *legal* control of" decedent. (Italics ours.) The trial court held that it did not. See conclusion of law No. 4 quoted above.

Respondent refers to the rule that this court will not substitute its judgment for that of the trial court on disputed issues of fact, citing *Wakefield v. Wakefield*, 59 Wn.2d 550,

368 P.2d 909 (1962), and *Mood v. Banchero,* 67 Wn.2d 835, 410 P.2d 776 (1966).

■ The rule, however, is not applicable in the present case. We are confronted, not with a disputed issue of fact, but with the interpretation of a written instrument. The instrument itself is the only evidence directly bearing on the intent of the decedent when he wrote the note.[2] This court held, in *State v. Comer,* 176 Wash. 257, 28 P.2d 1027 (1934), that:

> The interpretation to be given written instruments, whether the procedure be civil or criminal, is a matter of law for the court, and not a question of fact . . . . *State v. Richards,* 97 Wash. 587, 167 Pac. 47. (p. 266)

Where the interpretation must be made from the face of the instrument itself, this court is in as good a position as the trial court to interpret its meaning.

We agree with the trial court's interpretation of the note from appellant to the decedent (finding of fact No. 2) to the extent that its most obvious meaning was to request information as to what his father wanted done about the loan. We do not agree with its strained interpretation given the word "now" in the note. It must be remembered that the father was near death. The note from appellant expressed appellant's concern that the canceled check, evidencing a loan, would be used against him, apparently by some of decedent's other heirs. He wished to find out whether his father wanted the loan paid back before his death.

■ The trial court did not determine what the decedent intended by his answer, but only concluded, in finding of fact No. 3, that the father did not intend to forgive the loan. We disagree. No clearer expression of that intention could be expected from one of decedent's learning than that contained in decedent's note: "Keep it No Return."

---

[2] *We agree with appellant that the findings relating to decedent's frugality (finding No. 4) and those relating to his attempted disposition of other parts of his estate (finding No. 5) are not material to the interpretation to be given the writings involved on this appeal.*

We conclude, therefore, that the note from decedent to his son, appellant herein, is sufficient in and of itself to constitute a valid gift of the loan to appellant. *Tonkoff v. Coscia*, 66 Wn.2d 925, 403 P.2d 668 (1965). The judgment of the trial court is, therefore, reversed and the matter remanded for further proceedings as herein directed.

Respondent suggests in her brief that, since the trial court decided the case at the conclusion of appellant's evidence by sustaining her challenge to the sufficiency thereof, she did not have an opportunity to present opposing evidence on the issue of whether the notes in question written by the father and by the son, respectively, were genuine. It is contended, therefore, that the trial court was not given an opportunity to make an ultimate finding of fact on this issue. We infer from her statement that she does not wish to be held foreclosed as to this issue.

Because of the unusual manner in which this proceeding was instituted (there being no pleadings defining the factual issues), respondent has not been afforded the opportunity of introducing evidence in support of this claimed defense. We, therefore, believe that respondent is entitled to her day in court on this factual issue, if she desires to litigate it, or any other defense material to this controversy, and, accordingly, remand this case to the trial court for the taking of whatever additional material evidence may be presented on such issues. The trial court, after hearing such additional evidence as may be offered, if any, shall enter judgment in light of such additional evidence consistent with the views expressed in this opinion. If respondent elects not to present evidence on such issues, the trial court shall enter judgment striking from the inventory the $8,500 item designated as the open account loan of appellant.

It is so ordered.

FINLEY, C. J., HUNTER and HAMILTON, JJ., and STAFFORD, J. Pro Tem., concur.

July 24, 1967. Petition for rehearing denied.