ORDER OF AHEPA, a/k/a American Hellenic Educational Progressive Association, Inc., Appellant,

v.

TRAVEL CONSULTANTS, INC., Appellee.

No. 9386.

District of Columbia Court of Appeals.

Argued June 22, 1976.

Decided Dec. 20, 1976.

Amended Petition for Rehearing Denied Feb. 9, 1977.

Joseph J. Lyman, Washington, D.C., for appellant.

John Ellsworth Stein, Washington, D.C., with whom Stuart D. Halpart, Washington, D.C., was on the brief, for appellee.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

Travel Consultants, Inc. (TCI), appellee, sued the Order of American Hellenic Educational Progressive Association, Inc. (AHEPA), appellant, for breach of contract seeking $100,000 in liquidated damages. Following a jury determination of breach, the trial court entered judgment for the amount sought. We affirm.

Appellant, AHEPA, is a nonprofit, ethnic fraternal organization composed primarily of Americans of Greek descent, with a membership of approximately 22,000.

Appellee, TCI, is a travel agency engaged in the business of conducting travel services for various organizations holding

conventions and other group affairs. Its principal office is in the District of Columbia and it employs approximately 100 persons. The agency charges no fee to the organizations it services but rather works on a commission basis, receiving commissions primarily from the various airlines and hotels used by its clients.

In late 1968, AHEPA contacted TCI regarding travel arrangements for the AHEPA convention to be held in Greece in 1970.

The initial arrangements between the two, for TCI to handle travel arrangements to the 1970 convention, were cancelled and another travel agency was selected. However, not long thereafter, in December 1969, AHEPA changed its mind and again called upon TCI to perform the travel services for its 1970 convention since the agency previously chosen was not performing satisfactorily. At TCI's insistence, AHEPA provided TCI with written authority to make the necessary travel arrangements. After TCI had begun to act on this authorization, AHEPA instructed TCI to cease any further efforts on its behalf. In 1970, TCI filed suit for breach of this agreement in the local federal district court.[1]

On August 4 and 5, 1972, Sam Nakis, the president of AHEPA, David Randall, the president of TCI, and Richard Kendall, counsel for TCI, met to negotiate a settlement of the 1970 lawsuit. These negotiations culminated in the contract in issue. The pertinent provisions of this contract are as follows:

(1) The contract specified that to become effective, it would have to be ratified by the Supreme Lodge of AHEPA.

(2) TCI agreed to dismiss its 1970 lawsuit pending against AHEPA within a reasonable time after ratification by the Supreme Lodge.

(3) AHEPA appointed TCI as its exclusive agent to arrange and provide all travel services for AHEPA and its members for a term of five years, from January 1, 1973 to December 31, 1978. The provision of travel services was to include the "creation" and "design" of travel programs by TCI. AHEPA also granted TCI the exclusive right to make the travel arrangements for any Supreme Convention to be held by AHEPA before December 31, 1980. AHEPA was bound to accept only such programs as its officers believed could be successfully marketed, but was barred from allowing any other person or organization to perform any travel services for AHEPA without the consent of TCI.

(4) TCI was permitted to advertise its programs by purchasing space in the AHEPA magazine periodically distributed to the membership. TCI agreed that it would pay the same rates charged other advertisers by AHEPA. The parties, however, set a ceiling on advertising billings of three per cent of the gross amount of airplane tickets purchased by the participants in the travel programs arranged by TCI.

(5) AHEPA agreed to assist TCI in "promoting and permitting the promotion" of travel programs created by TCI.

(6) In the event of a breach, TCI could recover $100,000 as liquidated damages.

On August 20, the contract was ratified by the Supreme Lodge. On September 8, the newly-elected president of AHEPA, Dr. M. N. Spirtos, sent the following letter to TCI instructing it not to act pursuant to the agreement on behalf of AHEPA:

Gentlemen:

You are hereby notified that the contract allegedly executed by Mr. Sam Nakis with your company regarding travel arrangements for and on behalf of the Order of Ahepa is being further ex-

---

1. *Travel Consultants, Inc. v. Order of Ahepa, Inc.*, Civil No. 2512–70 (D.D.C., filed Aug. 12, 1970).

amined by the attorney of our fraternity, as to whether or not same was executed with proper authority. Accordingly, you are not to act on behalf of the Order of Ahepa until further notice.

Very truly yours,

/s/
M. N. SPIRTOS, M.D.
Supreme President,
Order of Ahepa

David Randall, TCI's president, responded by a letter dated September 15 in which he expressed surprise at AHEPA's action and noted that any impasse should be resolved soon in order to allow TCI adequate time to plan travel programs for the following year. Randall stated also that he already had made plans to go to Greece to begin work on a travel program for AHEPA's membership.

On September 25, Dr. Spirtos and other AHEPA leaders met with Mr. Randall at TCI's offices in Washington. At this meeting, Dr. Spirtos indicated his concern that Mr. Nakis, AHEPA's former president, did not have the authority to make a contract for more than one year.[2] He advised TCI that it wanted a reduction in the term of the contract from five years to one year. There was also testimony that AHEPA's leaders pressed for alterations in the contract which would give the organization remuneration for travel advertisements in its magazine in an amount greater than that which it would receive

under the contract.[3] The parties failed to agree to any modification in the contract and AHEPA did not rescind its order directing TCI not to proceed further under the contract.

On November 3, TCI dismissed the 1970 lawsuit as required by the contract. Two weeks later, Mr. Randall sent a letter stating:

Dear Dr. Spirtos:

Following up your letter of September 8, on which you told me not to proceed with our contract signed by Mr. Nakis and other AHEPA officials, we have had several conversations including conversations between your attorney and ours.

As I explained to you during our personal meeting, the contract for the yearly business of AHEPA is becoming less and less valuable as each day goes by— in fact, at this point the value of it for this year has been almost eliminated, since we are virtually too late to organize an effective program for 1973.

As you know, we have dismissed our law suit in accordance with our contract, and thus we feel that we have performed in accordance with our contract with AHEPA. Thus, unless we have your full authority to proceed in accordance with the signed contract or an acceptable alternate in writing by December 11, 1972, we will have no choice but to consider that the contract has been breached

---

2. Appellant raises no questions regarding the effectiveness of the ratification of the contract by the Supreme Lodge.

3. In his testimony regarding the September 25 meeting, Dr. Spirtos equivocated about whether AHEPA sought greater remuneration. Mr. Randall, in contrast, testified that: "The thrust of Dr. Spirtos' conversation with me was that the present contract was unsatisfactory to him and his administration in that there was not enough financial benefit to AHEPA." Moreover, Louis Manesiotis, an official of the organization,

testified that greater remuneration was AHEPA's "main concern" at the September 25 meeting. Mr. Kendall, counsel to TCI, testified that after TCI's receipt of the AHEPA's letter of September 8, he telephoned Joseph Lyman, counsel to AHEPA, to inquire about any problems AHEPA might have with the contract. According to Mr. Kendall, Mr. Lyman responded that "the problem was that the new officers of the AHEPA had determined that there was not enough remuneration in the arrangement for them."

by AHEPA and will have to proceed through whatever legal means are available to us to seek satisfaction.

Kindest regards,

TRAVEL CONSULTANTS, INC.

/s/
DAVID A. RANDALL
President

Appellant admits in its brief that it did not respond to this letter.

On December 22, 1972, TCI filed this suit in the United States District Court for this jurisdiction for breach of contract. Pursuant to the provisions of the Court Reorganization Act,[4] the case was certified to the Superior Court.[5]

The issue of whether or not AHEPA had breached the contract was tried before a jury. At the close of the appellee's evidence and again at the close of all the evidence, appellant moved for a directed verdict. Both motions were denied. Appellant also made a motion for leave to amend its answer to include the defense of illegality. This too was denied. The trial court determined as a matter of law that the contract was valid and submitted only one question of fact to the jury: whether the appellant breached the contract. The jury found that a breach had occurred. The court concluded as a matter of law that the liquidated damages clause was valid and entered a judgment for $100,000 with interest from January 1, 1973, for appellee. After the entry of judgment, appellant moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Both motions were denied and this appeal followed.

Appellant presents the following issues for our consideration: (1) whether the trial court abused its discretion in denying appellant leave to file an amended answer to interpose a defense of illegality of the contract; (2) whether there was insufficient evidence of a breach to permit the question to go to the jury; (3) whether the agreement is invalid for lack of consideration; (4) whether appellee waived the alleged breach; and (5) whether the liquidated damages clause is valid and enforceable.

I.

Appellant contends first that the trial court improperly denied its motion for leave to file a "Fourth Amended" answer under Rule 15 of the Civil Rules of the Superior Court in order to raise the defense that the contract was illegal as against public policy. The court previously had granted appellant three motions to amend. The challenged motion was first made orally at the close of the plaintiff-appellee's evidence. Appellant's defense, which Rule 8(c) requires to be pleaded affirmatively, is that the contract is tainted with illegality by paragraph 4(c) which provides that fees for advertising in AHEPA's magazine "shall be paid by TCI at the time it receives its commission payments for the travel program * * * up to three per cent (3%) of the gross amount of air transportation tickets paid for by participants in the travel programs * * *." Such payments, appellant urges, would constitute an illegal rebate of air transportation fares in violation of federal statutory provisions and regulations. Federal Aviation Act of 1958, 49 U.S.C. §§ 1373(b), 1472(d) (1970); 14 C.F.R. §§ 207.43(c), 208.213(c), 212.43(c), and 214.-33(c) (1975). In ruling on the motion, the trial judge remarked: "There has been nothing but one amendment after another.

4. D.C.Code 1973, § 11–922(b), District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub.L.No.91–358, § 111(b) (July 29, 1970) (effective Feb. 1, 1971).

5. In April 1975 appellant made a motion for summary reversal before this court on the grounds that the case improperly was certified to the Superior Court. We denied that motion on June 4, 1975.

It has to come to an end. You cannot prejudice the plaintiff. He has had no time to prepare." The judge noted also that appellant's counsel had little reason for delay in raising the defense of illegality since he had reviewed the contract for appellant prior to its signing and ratification in August of 1972. After the verdict, appellant made the same motion in writing. It again was denied.

Leave to amend is not granted automatically under Rule 15(a) but only where "justice so requires." The Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), indicated that a court might properly refuse to allow an amendment to a pleading where it was evident that the amendment was accompanied by "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, [or] undue prejudice to the opposing party". *See also* 3 J. Moore, Federal Practice ¶ 15.-08[4] (2d ed. 1974).[6]

■ We conclude that the trial court did not abuse its discretion in denying the motion on the grounds that appellant previously had been given ample opportunity to cure any deficiency in its answer and that injecting the defense of illegality into the trial after the plaintiff-appellee had closed its case would be prejudicial.

■ Appellant's further reliance on Rule 15(b) is also without merit. That rule states in pertinent part that leave to amend should be granted "to reflect issues tried by the express consent of the parties". The record shows, however, that appellee vigorously objected to appellant's efforts to inject the issue of illegality into the proceedings. These objections are sufficient to dispel any notion that TCI consented to the belated introduction of this issue. *See Gaines W. Harrison & Sons,*

*Inc. v. J. I. Case Co.,* 180 F.Supp. 243, 248 (E.D.S.C.1960).

In addition to arguing that the court abused its discretion in not permitting defendant to amend its answer, defendant also argued that the contract (paragraph 4(c)) having been made in violation of a statutory prohibition is void and therefore unenforceable, citing *Hartman v. Lubar,* 77 U.S.App.D.C. 95, 96, 133 F.2d 44, 45 (1942). Appellant also raised this issue in its motion for a new trial. Rather than to leave a cloud over this decision as permitting the enforcement of an asserted illegal contract on a technicality that the defense had not been specially pleaded as required, we treat briefly with the merits of the issue.

■ It is abundantly clear from a reading of the contract that it does not call for a rebate of air fares. Paragraph 4(c) provides that the cost to TCI of advertisements it places in AHEPA's magazine shall be billed to TCI "in accordance with the magazine's normal rates to other advertisers". The amounts billed "shall be paid by TCI at the time TCI received commission payments for the travel programs and in an amount equal to up to three percent (3%) of the gross amount of air transportation tickets paid for by participants in the travel program, which amount shall in no event exceed the total amount of the bills submitted by AHEPA." It is not a promise to pay a percentage rebate but rather a promise to pay for advertising at regular rates not to exceed three percent of the cost of the tickets purchased in the program.

II.

■ Appellant next challenges the trial court's denial of its motions for directed verdict and judgment notwithstanding the verdict on the ground that there was insuf-

---

**6.** Superior Court rules are to be interpreted in light of the federal rules where the corresponding provisions are literally or substantially identical. *See Campbell v. United States,* D.C.App., 295 A.2d 498, 501 (1972).

ficient evidence of a breach of contract to permit that issue to go to the jury. In reviewing these rulings, we must look at the evidence in the light most favorable to appellee, the nonmoving party, and determine whether a reasonable juror could find in favor of appellee. *See, e. g., Seganish v. District of Columbia Safeway Stores, Inc.,* 132 U.S.App.D.C. 117, 118, 406 F.2d 653, 654 (1968).

The evidence shows that Dr. Spirtos' letter of September 8, 1972, ordered appellee "not to act on behalf of the Order of Ahepa until further notice". It was shown also that subsequently appellant bargained for changes in the contract, specifically, a reduction in the duration of the contract from five years to one year and greater remuneration than would have been received from the advertising rates set by the contract. However, no modifications were agreed to. The evidence demonstrates also that until the filing of this suit, Mr. Randall repeatedly stressed to appellant that its refusal to permit TCI to begin planning travel programs was seriously undermining its ability to meet its contractual obligation to create and arrange a travel program for 1973. Also placed in evidence was a letter dated November 17, written by Mr. Randall to Dr. Spirtos requesting appellant to give TCI "full authority to proceed" under the original contract. Yet, AHEPA never lifted its order not to act.

Appellant argues that this evidence is capable of only one interpretation: that appellant sought only to discuss the possible modification of the contract. The evidence reveals nothing, it contends, which reasonably could be construed as an act of repudiation of the contract. We disagree.

██ For a repudiation of a contract by one party to be sufficient to give the other party the right to recover for breach, the repudiating party must have communicated, by word or conduct, unequivocally and positively its intention not to perform. *See, e. g., Cooper v. Cooper,* D.C.Mun.

App., 35 A.2d 921, 924 (1944). The evidence shows that on September 8, appellant ordered appellee not to act under the contract on behalf of appellant. The evidence demonstrates also that during the following months, appellant pressed appellee to agree to changes in the terms of the contract. Moreover, the record reveals that although appellee stressed its need to get preparations underway for a travel program for 1973, appellant steadfastly refused to lift its order directing appellee not to so act. On the basis of this evidence, we believe that a juror reasonably could find that appellant breached the contract by repudiation. Therefore the issue of breach properly was submitted to the jury.

Appellant's third contention is that the agreement was flawed by lack of consideration or "mutuality of obligation" and that therefore the trial court erred in ruling as a matter of law that the agreement was a valid contract. Since in its view there was never a valid contract capable of being breached it contends the court should have directed a verdict in its favor or granted it a new trial. We disagree.

██ It is elementary that a promise either to do something a party otherwise is under no legal obligation to do, or to refrain from doing something a party has a legal right to do, is sufficient consideration for another such promise. *See generally* 1 Williston on Contracts, § 103 (3d ed. 1957). Appellant promised to appoint appellee as its exclusive travel agent for a period of five years including the right to handle the arrangements for the Supreme Convention, if held before the end of 1980. In exchange for this promise, appellee promised to dismiss with prejudice its pending 1970 lawsuit. Clearly, this exchange of bargained-for promises constitutes sufficient consideration.

██ Appellant contends fourthly that appellee waived appellant's breach of contract and that therefore the trial court improperly denied its motions for a directed verdict,

judgment notwithstanding the verdict, and new trial. The waivers occurred, it argues, (1) when appellee dismissed the 1970 lawsuit in November 1972 as contemplated by the contract; or (2) when Mr. Randall discussed prospective trips to Greece over the telephone with AHEPA's executive secretary sometime after receipt of the September 8th letter, or both. The record shows, however, that appellant did not present either of these issues to the court below in its answer or in any of the motions the disposition of which it challenges on appeal.[7] Nor did appellant request any jury instruction on the issue of waiver. Consequently, the issue is not properly before us and we decline to consider it on appeal. *See, e. g., Germaine v. Cramer,* D.C.Mun.App., 65 A.2d 573, 574 (1949); *Brown v. Collins,* 131 U.S.App.D.C. 68, 72, 402 F.2d 209, 213 (1968); *Miller v. Avirom,* 127 U.S.App.D.C. 367, 369, 384 F.2d 319, 321 (1967).

Finally, appellant contends the trial court erred in ruling that the liquidated damages clause[8] did not constitute a penalty and was therefore valid and enforceable. It argues that at the time the contract was made, there was no consideration by the parties of the reasonableness of the damages provision but that due to prior difficulties between the parties, the sum of $100,000 which it now claims to be excessive was stipulated solely as an *in terrorem* clause.

 It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract but that such agreement is void if it constitutes a penalty. *See, e. g., Simms v. Bovee,* D.C.Mun. App., 68 A.2d 800, 802 (1949); *Davy v. Crawford,* 79 U.S.App.D.C. 375, 376, 147 F.2d 574, 575 (1945); 5 Williston on Contracts § 776 (3d ed. 1961). The standard in this jurisdiction for determining whether a provision for damages should be construed as a penalty is set forth in *Davy v. Crawford, supra.*

In order to determine whether or not the provision should be construed as a penalty the contract must be construed as a whole as of the date of its execution. If under the circumstances and expectations of the parties existing at the time of execution it appears that the provision is a reasonable protection against uncertain future litigation the provision will be enforced even though no actual damages were proved as of the date of the breach. If, on the other hand, it appears that the stipulation is designed to make the default of the party against whom it runs more profitable to the other party than performance would be, it will be void as a penalty. Thus, damages stipulated in advance should not be more than those which at the time of the execution of the contract can be reasonably expected from its future breach, and agreements to pay fixed sums plainly without reasonable relation to any probable damage which may follow a breach will not be enforced. [79 U.S.App.D.C. at 376, 147 F.2d at 575 (footnotes omitted).]

---

**7.** In these motions, appellant did raise the defense of waiver but premised the defense on a different set of facts than those relied on here. It argued below that AHEPA's agreement, after this suit commenced in 1973, to arrange a trip to Greece for a group of students connected with AHEPA constituted a waiver of AHEPA's breach of the contract in issue. The court rejected ,this argument and appellant does not raise it on appeal.

**8.** The contract states in pertinent part:
No. 8 *Liquidated Damages.* AHEPA understands that this Agreement is in settlement of the above-mentioned lawsuit and further understands that under this Agreement TCI is undertaking to perform considerable services and activities at a substantial cost to TCI which can only be recovered out of its profits, if any; and, accordingly, AHEPA agrees that in ,the event it revokes the agency created hereby or in the event of a breach of this Agreement by ,AHEPA, AHEPA shall pay TCI the amount of $100,000 for loss of a bargain and not as a penalty.

Having considered the evidence in light of this standard, we conclude that the trial court did not err in ruling that the provision is valid and enforceable. The evidence shows that at the time the parties contracted, it was difficult to establish precisely the amount of damages TCI would suffer in the event that AHEPA breached. Mr. Randall illustrated the difficulty by testifying that, for example, it was impossible to know with any certainty what air fares would be, how many members of AHEPA would participate in the various travel programs, or what level of commission the airlines would allow travel agents, over the term of the contract.

The evidence demonstrated also that the sum of $100,000 represented a reasonable estimate of the net profit which TCI could have expected to make under the contract at the time it was signed. Mr. Kendall, counsel for TCI at the time, testified that at the meetings between the parties on August 4 and 5, 1972, the liquidated damages provision was discussed and that the "figure of $100,000 was selected as a minimum amount and it seemed reasonable to all the people in the room." Mr. Randall and James A. White, an expert witness on group travel, testified regarding the profit which TCI could have made as exclusive agent to handle: (1) various travel programs for AHEPA over a five-year period, and (2) the Supreme Convention in Greece if one should be held prior to December 31, 1980. The uncontradicted testimony of Messrs. Randall and White showed that TCI would have been able to generate at least 35 flights to various destinations for the membership over the course of five years. Mr. Randall estimated on the basis of his experience in the travel business that the net profit from these flights would have been about $100,240. He testified further that an additional profit of approximately $300,000 to $400,000 could have been earned by TCI if a Supreme Convention had been held in Greece before the end of 1980.[9]

In sum, "the amount of the damages specified in the [contract] does not appear disproportionate, viewing the transaction as a whole, and certainly not more than what could have been expected from its future breach." *Frishman v. Stonebraker*, 295 F.Supp. 974, 977, *aff'd per curiam*, 133 U.S.App.D.C. 66, 408 F.2d 1269 (1969). Accordingly, we conclude that there was ample evidence to support the decision of the trial court that the provision was not a penalty.

For the foregoing reasons the judgment is

*Affirmed.*

9. Mr. Randall based this estimate on the following facts: (1) TCI carried 6,100 members of the American Psychological Association to its convention in Hawaii in 1972 and made a net profit of nearly $250,000; (2) a larger net profit per passenger would be made of a trip to Greece than to Hawaii, and (3) at the time the contract was signed, TCI knew that in 1970 approximately 7,000 members of AHEPA had journeyed to Greece for the Supreme Convention.