[No. 4027–1. Division One. August 1, 1977.]

ANTON LOVRIC, ET AL, *Respondents,* v. SAM DUNATOV, ET AL, *Appellants.*

*Lucas A. Powe,* for appellants.

*Detels, Draper & Marinkovich* and *Martin P. Detels, Jr.,* for respondents.

CALLOW, J.—This is an action by the plaintiffs Lovric to recover the unpaid balance on a contract to build a gill-net

vessel for the defendants Dunatov. The defendants appeal from a judgment entered in favor of the plaintiffs on July 22, 1975, for $3,232.80, plus interest from August 8, 1970, of $1,273.92 and costs, and dismissing defendants' counterclaim with prejudice.

The plaintiffs, Anton and Florence Lovric, residing at Anacortes and doing business as Lovric's Sea–Craft, are engaged in the construction and repair of vessels. The defendants, Sam and Martha Dunatov, are residents of King County, and Dunatov is an experienced fisherman.

In January 1970, the plaintiffs and defendants contracted orally for the construction of a gill–netter hull for the defendants. The plaintiffs were to convert a pleasure craft which had burned to the waterline into a gill–net boat in time for the summer sockeye season on Puget Sound. Construction was commenced. The hull was completed and the first payment timely received in February 1970.

By June 1, 1970, work had not progressed as contemplated under the oral agreement. The plaintiffs then prepared a written contract incorporating the oral understandings of the parties. This agreement was signed by both parties on June 6, 1970. It read in pertinent part:

> I [Lovric] propose to furnish all materials and perform all labor necessary to complete the following:
>
> build a 31' 10" gillnetter hull complete with cabin and reel and install all the necessary equipment which is supplied by the buyer for the sum of ($9,000.00) Nine thousand Dollars. I will supply all the lumber, nails, bolts, screws, glue, fiberglass, paint, mast, rudder and reel. The buyer, Sam Dunatov, will supply the water tank, fuel tank, stove oil tank, engine, engine controls, guages [sic], fittings, pipes, hydraulic steering system, shaft, propellor, electrical wire and fixtures, steering wheel, stove, sink, toilet and whatever other equipment the buyer wishes to install. I, the builder, will charge the buyer extra for whatever necessary equipment I buy that the buyer does not supply to me.
>
> All of the above work to be completed in a substantial and workmanlike manner according to standard practices.

for the sum of Nine thousand and 00/100 Dollars ($9,000.00).

Payments to be made in three installments. $3,000.00 when hull is complete. $3,000.00 when cabin is complete and engine is installed. $3,000.00 when the boat is completed, ready to fish. Boat is to be complete July 15, 1970. . . .

On June 7, 1970, the defendant–husband left Washington for Alaska without supplying all the materials and equipment called for by the contract. The engine was installed and the cabin finished with only fiberglassing and one window left to install on June 25, 1970. The second installment had not been paid at that time.

On July 7, 1970, the defendant's wife wrote to plaintiff in part:

I hope you have the boat ready when Sam, gets back home, he may have to go out fishing to make more money before he can pay you the rest, if he doesn't make it in Alaska. The situation up there is really bad . . .

Thereafter, two payments of $1,000 each were made, July 8 and July 12, with a payment of $2,000 on August 2, 1970, for a total payment of $7,000 to the plaintiffs.

The boat was not "ready to fish" on July 15 when the defendant returned to Washington. Following his return from Alaska, the defendant belatedly purchased and delivered some of the equipment he was contractually obligated to supply. The trial court's findings state, *inter alia:*

In January, 1970 plaintiff and defendants contracted orally for the construction of a gillnetter hull by the plaintiffs for the defendants. Construction was commenced. On June 6, 1970, the agreement was set forth in a written agreement, signed by the plaintiff and defendant husbands. Under the terms of the agreement defendants were to supply at their expense, certain specified materials and equipment. Plaintiffs were to charge extra for equipment not supplied by the defendants. The contract provided for a base price of $9,000.00 payable in three equal instalments, with the final instalment due on completion of the vessel, July 15, 1970.

Finding of fact No. 3.

Defendant husband left Washington for Alaska on June 7, 1970, at which time defendants had not supplied all of the materials and equipment which they were to supply under the contract.

Finding of fact No. 4.

On June 25, 1970, the cabin was completed and the engine installed, at which time the second of the three instalment payments was due and payable. No payments had been made up to that time, or thereafter, except as follows:

| | |
|---|---|
| January 10, 1970 | $2,000 |
| February 27, 1970 | 1,000 |
| July 8, 1970 | 1,000 |
| July 12, 1970 | 1,000 |
| August 5, 1970 | 2,000 |

Defendants were in default of the contract in two respects on and after June 25, 1970, firstly, in failing to make the payment due on completion of the cabin and installation of the engine, and secondly, in failure to supply the materials and equipment which they were to supply. The vessel was launched and delivered to defendants on August 8, 1970, without payment except as indicated above. The delay in delivery beyond July 15, was the result of the installation of materials and equipment which it was the defendants' obligation to supply, which were not supplied by the defendants until after July 16, 1970 and by a letter received by plaintiffs from defendant–wife indicating that the defendants would not pay for the vessel on delivery.

Finding of fact No. 5. The boat was finally delivered to the defendants on August 8, 1970. The plaintiffs had paid $1,232.80 for equipment which it had been the obligation of the defendants to supply.

The plaintiffs sued to recover the balance due on the contract. The defendants cross–claimed for loss of income caused by delayed performance. The trial court found for the plaintiffs and disallowed the counterclaim. Plaintiffs were awarded judgment for the balance owing on the base price of $2,000, plus $1,232.80 for the expenditures made by the plaintiffs for equipment, plus interest and costs.

The issues raised on appeal are:

1. Was timely performance by the plaintiff–boatbuilder Lovric excused by the claimed nonperformance of the defendant–fisherman Dunatov by his (a) failure to make payments timely, (b) failure to supply materials timely, and (c) anticipatory breach?

2. Was the defendant–fisherman entitled to recover on his counterclaim for loss by virtue of late performance by the plaintiff–boatbuilder?

■ The findings of fact contain factual statements and statements which are conclusions as to the effect of those facts under the agreement of the parties. We will not review those factual findings which reflect circumstances, deeds and happenings. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). We will review, however, those interpretations of agreements which, though denominated "findings of fact," are, in reality, conclusions of law. *In re Estate of Larson,* 71 Wn.2d 349, 428 P.2d 558 (1967); *Beedle v. General Inv. Co.,* 2 Wn. App. 594, 469 P.2d 233 (1970).

> *Was timely performance by the plaintiff–boatbuilder Lovric excused by the claimed nonperformance of the defendant–fisherman Dunatov by his:*
> (a) *Failure to make payments timely?*

The defendants assert in their counterclaim for damages that (1) their payments were made in accordance with the terms of the contract, thereby preventing the plaintiffs from claiming late payment as an excuse for delayed performance, and (2) the cabin was not complete until sometime in August, and therefore their payment was not late. These assertions are based on the proposition that (a) before each payment was due, the plaintiffs were required to give defendants notice and a demand for payment, and (b) the plaintiffs still had a window to install and fiberglassing to do on the cabin on June 25 when the cabin was claimed to have been completed. We do not agree.

■ The contract stated that payments were to be made in three installments of $3,000 each, when certain phases of construction had been completed. There is no stipulation that the plaintiffs' right to payment of an installment would accrue only after notice and a demand for payment had been given. The parties could have included a provision in the contract requiring such notice and demand, but they did not. The contract arrangement involved is similar to that found in construction contracts. It was stated in *Brady Brick & Supply Co. v. Lotito*, 43 Ill. App. 3d 69, 73, 356 N.E.2d 1126, 1130 (1976), concerning such agreements:

> Building and construction contracts frequently provide for partial payments to be made to the contractor as the work progresses, either periodically or upon completion of specified stages of the work and like any other contract may be rescinded for default in performance. The failure to pay an installment of the contract price as provided in a building or construction contract is a substantial breach of the contract . . .

*See also Watson v. Auburn Iron Works, Inc.*, 23 Ill. App. 3d 265, 318 N.E.2d 508, 511 (1974); *Lawson v. Donahue*, 313 So. 2d 263, 265–66 (La. Ct. App. 1975).

The record supports the findings that the right to payment of the first installment occurred during February, that the cabin was complete and the engine installed by June 25, and that the vessel was launched and "ready to fish" by August 8. The trial court was in the best position to evaluate and interpret the testimony in the light of the agreement as to when the cabin was complete and the engine installed. It appears that the cabin was finished except for incidental items by the June 25 date. Installation of the engine was certainly a major part of that second stage of construction. We will not substitute our judgment for that of the trial court in fixing the date that the second payment should have been made under the terms of the contract. *See Lidral v. Sixth & Battery Corp.*, 47 Wn.2d 831, 290 P.2d 459 (1955). The defendants then failed to pay the second installment on time. Nevertheless, the plaintiffs

proceeded with the work, though they were advancing their own time and funds to complete the contract. The failure to make timely payments was a material breach of the contract and excused the plaintiffs from performance of their work pursuant to the contract schedule. *Anderson v. McDonald*, 31 Wash. 274, 279–80, 71 P. 1037 (1903); *Arnott v. Spokane*, 6 Wash. 442, 450, 33 P. 1063 (1893).

(b) *Failure to supply materials timely?*

The defendants also argue that the plaintiffs' timely performance was not excused by the defendants' alleged failure to supply materials as required by the contract. This assertion is based (1) on the defendants' reading of the contract which results in an ambiguity with regard to the supplying of equipment, and (2) on the proposition that it was the plaintiffs' failure to devote sufficient man–hours, and not the nondelivery of materials and equipment, that was the proximate cause of the delayed performance.

██ Failure by an owner to supply materials or equipment when it is his duty to do so under a contract is a breach. *V.C. Edwards Contracting Co. v. Port of Tacoma*, 83 Wn.2d 7, 514 P.2d 1381 (1973). The court found that the defendant–husband left for Alaska without supplying the materials and equipment he was to supply under the contract. The defendants assign error to the finding of the trial court that delay was caused by the failure of the defendants to deliver material until after July 16, 1970, but they do not assign error to the finding that "Plaintiffs furnished and paid for certain materials and equipment which defendants were obligated to supply." This is a concession that this provision of the contract was breached to an extent. The assertion, therefore, that the failure to supply materials and equipment before the defendant left for Alaska was because of ambiguous contractual language pertaining to the supplying of the enumerated items, is inconsistent with the unchallenged finding which establishes that there was a partial breach of this term of the contract. The defendants are bound by the finding of breach since they did not claim

282

that it was erroneous. CAROA 42(g)(iii) and CAROA 43 (now found in RAP 10.3(g)); *Ebenezer A.M.E. Zion Church v. Corporate Loan & Sec. Co.*, 72 Wn.2d 128, 432 P.2d 291 (1967); *Federal Fin. Co. v. Solomon*, 7 Wn. App. 626, 501 P.2d 627 (1972). The record contains substantial evidence in support of the finding that failure to supply materials and equipment was a major contributing factor causing the plaintiffs' delayed performance, and we are bound by it.

(c) *Anticipatory breach?*

The defendants also assert that the plaintiffs' timely performance was not excused by reason of an anticipatory breach by the defendants. We agree.

■ An anticipatory breach occurs when one of the parties to a bilateral contract either expressly or impliedly repudiates the contract prior to the time for performance. *See Taylor v. Johnston*, 15 Cal. 3d 130, 138, 539 P.2d 425, 430, 123 Cal. Rptr. 641, 646 (1975); *Hemisphere Loggers & Contractors, Inc. v. Everett Plywood Corp.*, 7 Wn. App. 232, 234, 499 P.2d 85 (1972). A party's intent not to perform his contractual obligations, however, may not be implied from "doubtful and indefinite statements that the performance may or may not take place" (*Stonecipher v. Pillatsch*, 30 Ill. App. 3d 140, 143, 332 N.E.2d 151, 153 (1975)), or from "a negative attitude" alone. *Palmiero v. Spada Distrib. Co.*, 217 F.2d 561, 565 (9th Cir. 1954). The law requires a positive statement or action by the promisor indicating distinctly and unequivocally that he either will not or cannot substantially perform any of his contractual obligations. *Regional Enterprises, Inc. v. Teachers Ins. & Annuity Ass'n of America*, 352 F.2d 768, 775 (9th Cir. 1965); *Order of AHEPA v. Travel Consultants, Inc.*, 367 A.2d 119, 125 (D.C. Ct. App. 1976); *STC, Inc. v. Billings*, 168 Mont. 364, 543 P.2d 374, 379 (1975); *McKenzie v. Farr*, 541 S.W.2d 879, 882 (Tex. Civ. App. 1976); *Trompeter v. United Ins. Co.*, 51 Wn.2d 133, 140–41, 316 P.2d 455 (1957); *Pepper & Tanner, Inc. v. KEDO, Inc.*, 13 Wn. App. 433, 436, 535 P.2d 857 (1975); 11 S. Williston, *A Treatise*

*on the Law of Contracts* § 1322 (3d ed. 1968); 17 Am. Jur. 2d *Contracts* § 448 (1964).

The basis for the contention by the plaintiffs that the defendants were guilty of anticipatory breach is a letter dated July 7, 1970, written by the defendant Mrs. Dunatov to the plaintiffs. The letter stated in part:

> I hope you have the boat ready when Sam, gets back home, he *may* have to go out fishing to make more money before he can pay you the rest, if he doesn't make it in Alaska. The situation up there is really bad, they are on 2,000 limit, are able to fish only every other day. The cannery isn't able to handle anymore fish, as they aren't prepared for this big run. The fisherman are all getting disgusted, seeing all this fish swarming in the water and they can't catch them. Also there are too many boats which makes it bad. *Perhaps* will have more to tell you if I get a letter from Sam.

(Italics ours.) This letter fails to meet the standards required before declaring a contract to have been repudiated. The statement that the defendants "may" not be able to pay on delivery of the boat as required by the contract, without something further amounting to the requisite distinct and unequivocal refusal to perform, did not excuse the plaintiffs from timely performance. This portion of the finding is superfluous to the outcome, however, as the breach by the late delivery of materials and equipment was sufficient to excuse performance under the contract by the boatbuilder.

We affirm the determination that the defendants breached their contractual obligations to pay for the boat in three equal installments at designated stages of the boat's completion, and breached their contractual obligation to supply materials and equipment.

*Was the defendant–fisherman entitled to recover on his counterclaim for loss by virtue of late performance by the plaintiff–boatbuilder?*

The delayed performance of a contract will

be excused where it is caused by the party who objects to or seeks damages for the delay. A person failing to complete a contract in time because of the act or fault of the other party is not liable for the delay. His failure in such a case is stated not to be a breach. Indeed, there is an implied term that the person for whom work is contracted to be done will not obstruct, hinder, or delay the contractor, but on the contrary will in all ways facilitate the performance of the work to be done by him. Where a contract calls for completion of the work by a certain day, acts done by the employer which delay the contractor constitute an excuse for noncompletion on the day specified, and acquiescence by the contractor in the acts of the employer does not alter the case.

(Footnotes omitted.) 17 Am. Jur. 2d *Contracts* § 389 (1964).

■ When an owner or employer fails to perform the terms of a contract timely and thereby delays performance by the contractor or builder, the delayed party is excused from timely performance and damages caused by the delay are not recoverable by the one responsible for it. *Hydraulic Supply Mfg. Co. v. Mardesich,* 57 Wn.2d 104, 105, 352 P.2d 1023 (1960); *Olson v. Snake River Valley R.R.,* 22 Wash. 139, 146, 60 P. 156, 158 (1900). *See also Weaver v. Williams,* 211 Ore. 668, 317 P.2d 1108, 1111–13 (1957). We agree that when the defendants failed to pay and failed to supply necessary materials and equipment on time, they became the cause of the plaintiffs' delayed performance and may not recover damages for a delay of their own making.

The judgment is affirmed.

WILLIAMS and ANDERSEN, JJ., concur.