[No. 9154–9–I.   Division One.   June 21, 1982.]

DIAMOND PARKING, INC., *Respondent,* v. MARTIN
THEATERS OF GEORGIA, INC., *Defendant,*
STERLING RECREATION ORGANIZATION
COMPANY, *Appellant.*

*Ferguson & Burdell* and *Andrew Symons,* for appellant.

*Diamond & Sylvester, Paul Sikora,* and *Terry Thomson,* for respondent.

WILLIAMS, J.—Diamond Parking, Inc., brought this action for declaratory judgment against Martin Theaters of Georgia, Inc., and Sterling Recreation Organization Company, Martin's successor in interest to a commercial ground lease, seeking construction of a rental adjustment provision in that lease. In a trial to the court, sitting without a jury, judgment was entered in favor of Diamond, the court appointing a third appraiser to assist in determining the fair rental value of the property. Sterling appeals raising issues concerning the appointment of the third appraiser and attorney's fees. Diamond's cross appeal raises issues concerning the frequency of rent adjustment under the lease and the authority of the appraisers. We affirm in part and reverse in part.

The facts are as follows: Diamond and Martin agreed to the lease in 1962 for a term of 35 years. In 1972 Sterling acquired the theater Martin built on the property, assumed the lease, and paid rent to Diamond. The lease contains the following rental adjustment provision:

> Diamond hereby leases to Martin [now Sterling] the above property for a term of thirty–five (35) years, commencing April 1, 1962, at a monthly rental of Nine Hundred Twenty–five ($925.00) Dollars, payable in advance on the first day of each and every month during the term of said lease, provided that said rent shall be adjusted to fair rental value of ground only (but in no event less than $925.00, per month) at the end of the first fifteen (15) year period for the next ten (10) year period and again at the end of said ten (10) year period for the final ten (10) year period of the lease. If the parties are unable to agree on said adjusted rent, they shall attempt to agree upon

an appraiser, whose decision shall be binding on both parties. If the parties are unable to agree upon an appraiser, each shall appoint an appraiser and the two so selected shall appoint a third appraiser. If the two so selected are unable to agree on a third appraiser, the third appraiser shall be appointed by the Presiding Judge of the Superior Court for King County, Washington. A decision of a majority of the appraisers shall be binding upon both parties. Expenses of the appraisal shall be paid one–half by Martin and one–half by Diamond. Negotiations to adjust rent shall commence not later than six (6) months prior to date for change in rent. If negotiations are not completed at date fixed for change, Martin shall continue to pay same amount of rent as during prior period until new rent is fixed at which time a payment shall be made by or received by Martin to effect payment of new rental from beginning of rental period.

At the end of the first period, Diamond selected Martin Smith and Sterling selected Earl Stay as the appraisers who established $2,187.50 as the monthly fair rental value for the 10–year period commencing on April 1, 1977.[1] Martin Smith stated in a May 30, 1978, letter to Diamond:

Earl and I have mutually agreed that a fair market valuation of the property, as of April 1, 1977, is in the amount of $300,000.00. In addition, we have mutually agreed that the equitable rate of rental to the Lessor monthly should be 1/12 of 8.75% of the fair market value of $300,000.00 indicating a market rental, beginning April

---

[1]That figure was arrived at through a capitalization rate method of property valuation. *See generally* 1 J. Bonbright, *Valuation of Property* 216–32 (1937). The procedure requires the appraisers to agree on a fair market value of the subject of the appraisal, and then select a capitalization rate that reflects the market's perception of the future income generating capacity of the property at the time of the appraisal. Those values are multiplied to obtain a figure representing the annual fair rental of the property, and that figure is divided by 12 to attain the monthly fair rental value. 1 J. Bonbright, *Valuation of Property,* at 216–32.

The capitalization rate is determined by many complex factors including the nature of the use of the property, the economic stability of the lessee, the market's analysis of future economic conditions and increases in land values insofar as those items are predictable. Necessarily, the capitalization rate represents an educated guess at future economic conditions, a technique far from perfected at present. 1 J. Bonbright, *Valuation of Property,* at 259–64.

1, 1977, of $2,187.50 per month. Because Mr. Stay and I both agree on these figures it does not appear that another appraiser is necessary to establish these conditions.

Smith's letter further stated:

You have asked my opinion as to an equitable rental for this property for the ten year period beginning April 1, 1977, recognizing the rapidly improving land values in the Regrade area and continued inflation and interest rates. Based on these assumptions, I would feel that the rental should commence at the $2,187.50 per month as recommended above and be subject to review at least once during the term of the lease and the rental increased, either by mutual agreement of the parties thereto, or submitted to arbitration in the event they cannot agree. *In otherwords, I believe a flat rental for a ten year term on this property considering today's economic and market conditions would result in the owner probably receiving substantially less than an equitable rental, particularly during the latter stages of the ten year lease term.*

I did discuss the possibility of establishing a rental for an initial five year term with Mr. Stay, leaving the latter five years to be subject to increase based on either agreement or arbitration at that time and he reported that his client was not in favor of this approach.

(Italics ours.)

The trial court, upon hearing the testimony of the appraisers and considering Smith's letter and the other evidence presented, decided that the appraisers had not agreed on a fair rental value for the next 10 years of the lease and ordered that a third appraiser be selected. The court also ruled that the rental could not be adjusted during the 10–year period. We first address the issues raised by Sterling in its appeal and then the issues raised in Diamond's cross appeal.

■ Sterling first argues that the trial court erred in finding that the appraisers had not agreed on the fair rental value because of Smith's suggestion in the May 30, 1978, letter that an additional rental adjustment period be provided halfway through the 10–year period beginning in

1977. Because construction of the lease is necessary to determine the legal effect of the actions of the appraisers, this court may conduct an independent review. *See In re Estate of Larson,* 71 Wn.2d 349, 354, 428 P.2d 558 (1967); *Lovric v. Dunatov,* 18 Wn. App. 274, 567 P.2d 678 (1977).

It fairly appears that both appraisers agreed on the fair rental value of the property as of April 1, 1977. The second part of Smith's letter has nothing to do with setting the fair monthly rental for the 10–year period. Rather, that portion dealt with shortening the appraisal periods to take into account the rapidly improving land values in the area and continued inflation and high interest rates. In other words, Smith advised Diamond that it would be better to have more frequent rental adjustments because a more "equitable" rental could be charged, particularly in the latter stages of the 10–year period, if the fair rental value of the property was determined more often during that period.

That advice does not change the $2,187.50 per month figure computed and agreed upon through a capitalization rate method of property valuation. Consequently, the trial court erred in determining that the appraisers did not agree on the fair rental value, and directing that a third appraiser be appointed; that portion of the judgment should be reversed.

Sterling next argues that the trial court should not have awarded attorney's fees to Diamond. The lease provides that the prevailing party in a dispute arising out of the lease shall be entitled to reasonable attorney's fees and costs. Because of our decision that the appraisal was completed and there was no need to appoint a third appraiser, Diamond is no longer the "prevailing party" entitled to costs and attorney's fees under the terms of the lease. *See Andersen v. Gold Seal Vineyards, Inc.,* 81 Wn.2d 863, 505 P.2d 790 (1973).

On its cross appeal, Diamond first argues that the trial court erred in concluding that the lease prohibited the appraisers from providing for rental adjustments during the 10–year period beginning in 1977. It claims that because

there is nothing in the lease about rental adjustments during the three specified periods making up the 35–year term of the lease, the appraisers were free to establish rental adjustments at any time.

Paragraph 2 of the lease provides in part:

> [R]ent shall be adjusted to fair rental value of ground only (but in no event less than $925.00, per month) at the end of the first fifteen (15) year period for the next ten (10) year period and again at the end of said ten (10) year period for the final ten (10) year period of the lease.

This clear expression controls. To vary the times rent is to be adjusted would, in effect, rewrite the terms of the contract. *Seattle–First Nat'l Bank v. Earl,* 17 Wn. App. 830, 835, 565 P.2d 1215 (1977), *review denied,* 89 Wn.2d 1017 (1978). The court correctly concluded that the lease prohibits rental adjustments during the 10–year period.

But Diamond argues further that the appraisers may, in the exercise of their inherent power to determine the fair market rental value of the property, provide for more frequent rental adjustments, despite the terms of the lease, relying in part on *Black Mt. Ranch v. Black Mt. Dev. Co.,* 29 Wn. App. 212, 627 P.2d 1006 (1981). While appraisers are accorded substantial discretion in determining the value of the subject of the appraisal, they may not ignore the clear terms of a contract. *See Peterson v. Granger Irrig. Dist.,* 137 Wash. 668, 670, 243 P. 847 (1926) (appraisal conducted on fundamentally incorrect basis not binding).

That portion of the judgment requiring that the appraisal continue with a third appraiser is reversed and the award of costs and attorney's fees to Diamond is vacated. The cause is remanded to the Superior Court for entry of judgment declaring the fair rental value of the property for the 10–year period commencing April 1, 1977, to be $2,187.50 per month and for determination and award of Sterling's reasonable attorney's fees and costs at trial. Sterling will not recover appellate expenses because no affidavit detailing attorney's fees and costs on appeal was filed

as required by RAP 18.1(c).

SWANSON and CORBETT, JJ., concur.

Reconsideration denied September 15, 1982.

Review denied by Supreme Court December 3, 1982.